Case 25-2527, Eastern District of Arkansas, Brittany Byrd v. William Tapley. Good morning, Your Honors, and may it please the Court. Annie Depper here to argue on behalf of the appellant, William Tapley. The issue before this Court today is whether the trial court erred in its denial of qualified immunity to the appellant, William Tapley. We submit respectfully that it did. As this Court is aware, a government official is entitled to qualified immunity if his conduct did not violate a clearly established constitutional or statutory right, and that consists of a two-prong analysis. First, the Court looks at, when determining qualified immunity, did the official, did the officer, violate a constitutional right? Second part of that analysis, second prong, is whether the constitutional right was clearly established at the time of the incident, that two-prong analysis. In this case, Your Honors, this appeal involves only the first prong, only the first prong of whether there was sufficient evidence to demonstrate that William Tapley violated Ms. Byrd's constitutional rights. Ms. Byrd, because we are here today, she filed a lawsuit, asserts that he did. Ms. Byrd was a patrol officer with the Conway Police Department. She then applied for a promotion, applied to be promoted to sergeant. Also, another individual, other individuals applied, and one was James Jess Burroughs, a man. Ultimately, the chief, William Tapley, chose James Jess Burroughs for that promotion. Ms. Byrd asserts that the basis of that decision was discrimination, sex discrimination. Mr. Tapley, Appellant Tapley, says, no, there were other considerations there, qualifications that I thought that Mr. Burroughs had, that I thought were important for this position. This court today is looking at a 1983 action, a sex discrimination, failure to promote claim. How do courts analyze those? How do courts determine if there's enough there to get to a jury? First, they'll get direct evidence. Is there any direct evidence here of intentional discrimination? Aren't we even one step prior? We are at an interlocutory appeal. We're not at this typical summary judgment. We have to look at what are the facts that the district court found or that we can infer? There are not a lot of facts here. I should maybe have let you get further into your argument, but as I read the briefing, it's sort of a discussion of what's more important and why Mr. Burroughs was more qualified than Ms. Byrd. That seems to be outside the purview of what we can do, at least at this stage, on interlocutory appeal, just determining whether, based on the facts that the district court found, can she proceed with her claim. I understand that, Your Honor. And I was going through the McDonnell-Douglas to show you what I'm focusing on. And what we're focusing on, as this Court has identified, is the issue of pretext based on qualifications. I do believe this Court has jurisdiction to address the issues that we brought up in our brief. And I would cite the Court – I didn't cite it in my briefing, but I have it here – to a case Letterman v. Doe, 789 F3D 856, 8th Circuit, 2015. In that case, the appellee was saying, no, no, no, what they're asking you to do is weigh facts. Look at the facts. That was an interlocutory appeal case? Yes, Your Honor. And what the Court said there was, we disagree. We retain jurisdiction to consider legal issues such as the application of the law to a set of facts. Right. And so let me ask this then. Do you all agree on the set of facts? Because as I heard sort of some of the briefing, it was, well, the examination result wasn't quite as important ultimately down the road. Those all seem to be kind of facty things. And so can you address that? Yes, Your Honor. I think that when you look at this case, pretty much most of it is undisputed. Right? I mean, because it's very black and white. What were the test scores? How did the lieutenant state that people did during the interviews? How many years did this person work with patrol? So I think these facts for the vast majority are undisputed. Is there a fact dispute on what kind of weight to give each fact or each factor? I don't think there's a fact dispute on that. I think there's a dispute on exactly what the standard is and what Ms. Bird would have to present to this Court to meet the standard that we say. She'd have to demonstrate that she was substantially more qualified or that Mr. Burroughs was substantially less. And our argument is that what she presented, even if you view the facts in her light, light most favorable to her, as this Court must do, as the trial court did, even if you do that, right, judging everything in her favor, there is not enough there to meet that legal burden. That's what our argument is. Ms. Denford, what was the extent of the district court's qualified immunity analysis? Your Honor, I think the district court just analyzed that first prong, made a decision about whether there was sufficient evidence to get to a jury on the issue of pretext, and the McDonnell-Douglas weighing that out, and determined that it did. My recollection was that the qualified immunity analysis was very cursory. It was, Your Honor. It was. There's no doubt about that. I think the court was dealing with a number of, there were many, many claims in this case, and the court was parsing through them. Ms. Denford, here on an interlocutory appeal on qualified immunity, was the analysis sufficient for this court to do an appellate analysis on qualified immunity? I think it was, Your Honor. I think the court hit the two main points, right? He looked at the evidence, and he said there's enough here for Ms. Byrd to get to a jury on the issue of pretext, and did cite to what he was looking at. He then said that he did not believe that there was any issue with regard to clearly established, and I think the court's right on that, right? If it's clearly established, you can't discriminate someone based on sex and making decisions in employment context. So I think the court did, Your Honor. I think the court gave this court, although it was very short. There was, I think, maybe a paragraph or two about certain issues related to this pretext, and the court did go through and say this is what I'm looking at with regard to qualifications. Here they are. Here's what I'm looking at with respect to Ms. Byrd. Here's what I'm looking at with respect to Mr. Burroughs, and because of that I think this issue is close enough, and the court used the word close, which to me is important, is close enough to get to a jury. So what specifically was the legal error that you allege? Your Honor, the legal error is that the standard that is put forward by this court, when a plaintiff is arguing that the pretext, their demonstration of pretext, is based on qualifications, this court has held recently, the pilot case in 2025, that if you're saying pretext is based on qualifications, you have to show that you were substantially more qualified or the person who was chosen was substantially less qualified, and that substantial language is important. That was Pilot v. Duffy, 2025, July of 2025, and in this case what the judge did was trial court looked at the evidence, like most favorable to Ms. Byrd, and said this is close enough, close enough. That substantially more qualified language sort of is pulled from a previous case which just sort of found as a factual matter in a summary judgment stage, no, you can't proceed because this other person was substantially more qualified. It's an interesting plucking of that language to then set it as a standard. And, Your Honor, I think it's an interesting line of cases, right, how we get to that, how we get to the pilot court plucking, as you said, that language from Torgerson. And so you've got in that line of cases, you start with the Kincaid case, and in Kincaid and then through Torgerson, what the court is looking at in the standard is comparable qualifications isn't enough. That's not enough. If you all are similarly qualified, that's not enough. Importantly for me, Pilot, as you said, plucking that language from Torgerson, what the court did in Torgerson, though, I think this is important language out of Torgerson, the court said, talking about the standard in the Eighth Circuit, the court said, quoting Kincaid, to support a finding of pretext, the applicant must show that the city hired a less qualified applicant. And then the Torgerson case, the court said, the Supreme Court has approved similar standards from other circuits. So talking about similar standards. And then cites all of these ones that talk about significance and weight. So Cooper v. Southern Company, Eleventh Circuit, 2004, quote, disparities in qualifications must be of such weight and significance that no reasonable person in the exercise of impartial judgment could have chosen the candidate selected over the plaintiff for the job in question. Here, I guess one of my questions, I guess it is, are we still trying to figure out what the important qualifications are? We're not at the full, we're at qualified immunity, we're at an interlocutory appeal as to whether or not someone is more qualified. And I'm just trying to figure out, there's very few findings, as Judge Gross has pointed out. So I still feel like there's a dispute about which qualifications are more important than others in the ultimate determination. And if a court were to try to determine who's more qualified, we'd be at least at this stage sort of reassessing what the district court's already done, or trying to assess it anew. Your Honor, I think first, I don't think this court can sit and determine which qualifications are most important. As the Eighth Circuit has stated numerous times, the employer gets to determine, and in Kincaid the court said this, the employer gets to identify what strengths, what weaknesses, what's important for that employer when determining who they want to hire. But is that in the record here? What the employer determined, or either by policy or practice? Yes, Your Honor, it is in the record. It is in the record. But did the district court find it? And again, I know I'm sounding a bit like a broken record, but we're on an interlocutory appeal and our jurisdiction is very limited. It is, Your Honor, but I think you can look at what the district court found, right? And in this, in the district court's opinion, what did the district court find? What did the district court look at in terms of evidence on this issue? What the court looked at was qualifications. And I have a bullet pointed out here. According to the court, and this is true, all these are true facts, Byrd scored higher on the written examination. Undisputed. Yes, one point, I think five points higher. Byrd had more training hours than Burroughs. Undisputed. Yes, I think it was about 160 training hours. Burroughs was employed by Conway Police Department four years longer than Byrd. Undisputed. He had seniority. Burroughs had high performance evaluations. Undisputed. He did. Those are all in the record. Burroughs maintained a CLEST, Commission on Law Enforcement Standards and Training, senior certificate, and Byrd maintained a CLEST, advanced certificate, a less advanced certification. That's what the court looked at. That's what the court determined based on, the district court said, those are the facts that in front of this court show, and quote, that it was close, that this is close enough. So I think the problem is the court didn't apply the correct standard. I think if you look at it, and to be true, the court didn't have that language in PILOT at the time. The court issued its opinion on July 2nd. PILOT comes down July 10th of 25. And so the court didn't have the benefit of that. But I think what the PILOT court did is look at the line of cases, going Kincaid, Torgerson, and said, okay, well, for once, we are just saying what it is. This is what the standard is, and I don't think that the PILOT court could have been more clear. Quote, while hiring a less qualified applicant can show pretext, the hired applicant must be substantially so. Using that language, substantially, that is very clear. Now, certainly PILOT was, quote, referring to Torgerson, looking at Torgerson, look at Torgerson, looking at all these other circuits that are talking about substantially so, great weight, that kind of thing. But the court came out and said it in 2025. And that's in line with what it looks like other courts are doing around the country, is making it more clear. And I'm getting in my rebuttal, but I just want to say this. Make it more clear, because if you don't make it clear, and you're dealing with these similar ones, Judge Keller, you were asking about, how can we look at all these qualifications and weigh them out? Again, the courts don't sit as super personnel departments, and so that substantiality, right, you've got to be so much more qualified that no reasonable person could look at it and go, I understand why you chose that person. That takes the courts out of a super personnel department and looks at reasonableness, because now you're going, anyone can see that you were so substantially less qualified, you never should have received this job. I'm getting into my rebuttal, and I will sit down unless there are other questions. Thank you. Thank you. Good morning, Your Honors. I'm Robert Newcombe, and I represent the appellee in this case, Brittany Byrd. She, at the time of this case, arose from her applying to become a sergeant with the Conway Police Department. She'd been a patrol officer, as the record reflects, for a number of years. Also had experience as their canine handler. The issue, as I see it on it, is there is, as the court, Judge Kelly said, about plucking it out, that substantial word was a reference from a decision in another case, the cases courted by the Supreme Court in Ash v. Tyson. In the earlier case of Kincade v. City of Omaha, the court talked about less qualified. We have, in this case, which is unusual, in my experience, that it's not really a question of whether the law was clearly established at the time this qualified immunity decision came down. Yes, Judge Miller did not go into depth on it. He just said the law was well established on discrimination based on gender, was unconstitutional under the 14th Amendment, and he courted a case involving the University of Arkansas where this court had found that you could have personal liability under 1983 for actions of discrimination based on gender. So the issue comes down to whether the facts are such that we're almost like a non-interlocutory appeals summary judgment grant because we're here on the merits of the facts. What are the facts? What did the district court decide? So I think there is maybe a question of jurisdiction since there's a conceding of silence in his counsel justifiably was carried with the court in her opening that the law is well established on discrimination so we don't have that prong of a qualified immunity. Counsel, did the district court make any factual findings as to pretext for discrimination? I think, as I understand the appellant's argument, they're saying that if we look at the undisputed facts, there's really nothing here to show pretext for discrimination. Well, I don't think the court is clearly as we would all maybe like today Clarity, and I'm not trying to disparage Judge Miller. I've known him too long. But, no, that was not expressly. He talked to, the judge did make findings on page 9 and 10 of the addendum to the appellant's brief about where there was differences and whatnot. One issue that the judge did not, Judge Miller didn't address, but from a question you all asked about weighing the factors of these different components. And I would refer to, it's sort of an unusual case in the employment area, in that there's a state law that sets forth how you do promotions when an employer has civil service rules and regulations. And that statute spells out that the testing procedure is to determine the relative fitness of the candidates for promotion. And the statute goes on to allow that you can have several matrix or components of the testing procedure to determine the relative fitness and you do a rank order of the candidates. The city of Conway chose only one component. That was the written test. The statute allows they could have had oral testing, they could have had performance evaluations. So are these all sort of facts that you think we should infer that the district court found to support its denial at this stage? Well, I think, as in answering more of the question, was there anything in the record, pro or con to either party, about the weighting of these factors that Chief Tapley says he took into consideration. My point was that there is a state statute that talks about what can be done and then what the city did do. And that statute is ACA 14-51-301. And so by at least the state legislature, it said that here are important components if you want to use them. And the city chose to have the written test as the only statutorily permitted part of the test. They allow other factors and the chief said he took into consideration seniority, but the city obviously didn't think that was important in setting up the criteria. As far as the facts, the judge did make specific facts concerning the individual's relative qualifications. Obviously, Ms. Byrd was relatively more qualified by statute by having the higher grade on the written test. There was an oral panel that wasn't part of the ranking process, but was used where she had higher rankings from the lieutenants except for one who did write Mr. Burroughs higher. She had more training hours. That was a factor the judge found. I think he also noted that she accumulated more training with 40 years less service. It's not where there's a slight difference because they both got on the job at the same time, but he had four more years and had less training hours. There was also the fact that the court talked about evaluations. Yes, Mr. Burroughs had good evaluations, but Ms. Byrd was the only one of the two who had received the highest evaluation on one of her evaluations, had only one meet standards, where Mr. Burroughs had, I think, five, and they both had the same evaluations on all the rest of their evaluations. There are specific facts that Judge Miller found that a jury could say it was a close question, and the purpose of summary judgment is not, as the court is well aware, is not to try to give credibility determinations to it or wait to it. It's to look at the record on a de novo standard and decides giving all weight in favor of the appellee, in this particular case the non-moving party, to the facts or looking at the facts that are enumerated by Judge Miller plus the other facts that are in the record that I've mentioned in my brief. The appellee contends that if the court finds it has jurisdiction, and I know that that was obviously, Judge Kelly, a question you had, and I think that the question comes down to the jurisdiction. Is this truly an interlocutory appeal when you have one of the components, prongs of qualified immunity, that is, is the law well established or not, not contested, that we have a non-contested, they concede that by oral arguments, statements, and the lack of raising that at the summary judgment stage, really trying to show that there was anything that would leave a question in the administrator's mind that, well, it might be all right to discriminate because of gender, race, national origin. Those are clear, almost bright lines. Is it a fact that when looked at as most favorable, is he less qualified than her? What is substantial? Do you agree that that's the test, substantially? No. I try to make heads or tails out of the decisions. If you look at the decision from Omaha, the Kincade case, they don't use substantial. They just say less qualified. Then in Duffy, the court appears to incorporate the standard of another circuit and uses the word substantial. I'm not trying to be flippant, but I could argue either way, Your Honor, based on those two cases. I'm not saying there's a conflict in the panels, maybe, but that's the dilemma, trying to figure out what is the standard in this circuit. The Supreme Court did not help the lower courts, in my humble opinion, by citing all the different standards used by the different circuits and then said we're not here to decide that today. I think that that kind of creates an argument. That's why I said you could argue it either way. I do not concede that substantial is the standard by an express opinion of a panel or an in-bank decision of this court. I find dictum references to other courts, but there's also references to, I think, about four or five different circuits. Counsel, what is the standard, in your view, specifically? I think the standard is that there is a difference of degree, of being less qualified or more qualified. Once you reach that there's differences in the person's undisputed qualifications, you lay them side by side. It is a factor that then goes to rebut. Do you think there's a dispute here about qualifications? Yes. What is that? The importance of the written test, the importance of the oral interview, the importance of training hours, the importance of job performance, based on evaluations. In your argument, I take it you're not, are you saying there's a dispute about who is better in each category or are you saying the relative weight is an important dispute? I think it's a relative weight one. You could be better in one category and not as good in nine others, and obviously the one with the nine to one would be the better overall qualified candidate. We don't have Chief Tapley. Other than saying he doesn't give much weight to the written test, that's the one state criteria that we use that is mandated by law, and I don't think it's very important. I think these are more questions for a jury to weigh out the factors. Is Burroughs less qualified? I don't think there needs to be an adjective placed in front of that because what adjective are we going to place? The Supreme Court hasn't spoken on what standard to use, and as the ash case, I'm probably off on the number, but there's maybe five different circuit views on what's the weight that has to be for less qualified. Unless the court has some other questions, my time expires in about one second. Thank you. Your Honor, just very briefly with my very short remaining time, I looked back at Torgerson, Kincaid, Pilot, and every single one of those cases. This court addressing a motion for summary judgment looked at qualifications, looked at the facts that were presented to the court below, and I think this court can do so if you're taking the facts viewed in the light most favorable to Ms. Berg. This court can apply those facts. It's not weighing them. It's applying them to the standard. I think counsel suggested that there's a state statute perhaps at play that offers the defendants here different sort of standards to apply and that the standard that was opted into here was the test score. What's your response to that? Your Honor, with all due respect to Mr. Newcomb, there is a statute in Arkansas that allows civil service commissions to establish procedures to get the eligibility list. So when there's an opening for the fire department or the police department, the civil service commission can do written tests, can do their own interviews, can do all those types of things, but at the end of the day, all they're doing is producing a list that says these are the people who we deem eligible to work for a police department or fire. Then the fire department or the police department does whatever they want to do. They can do interviews. They can do physical agility tests. They can do all kinds of things to choose from that list. It just presents them with the list, and that statute allows for the chief to choose anyone, anyone from the top three. It doesn't say number one, right? It doesn't. Finally, I would just like to point out that if you're looking at the substantial, the language of substantial, it is also in another Eighth Circuit opinion, Peterson v. Scott County, a 2005 case that's cited in my brief. So Pilate didn't pull it just out of thin air and not just from Torgerson. There was other language out there. Now, Pilate didn't cite that case, but it has been in the Eighth Circuit's mind for a while. Finally, if this Court is applying the substantial, I would mention that everything in this case is close. Written test scores, close, 1.5 points. You look at the lieutenant's notes on interviews. They say this is very close. It's hard to choose among them who's best. And then you have Judge Miller's opinion that says this was close. That is insufficient, even viewing the lights in the most favorable to Ms. Byrd. And I appreciate the time. Thank you, counsel. Thank you to both counsel for your arguments here today. We will take the matter under advisement.